IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| AIMEE MORAN and JESSICA MAZZEO : <br> : <br> *Plaintiffs* : <br> : <br> v. : <br> : <br> ROCKWELL DEVELOPMENT GROUP, : <br> LLC; ROCKWELL EDGMONT, LLC; : <br> ROCKWELL EDGMONT, II, LLC; : <br> ROCKWELL HOMES, LLC; and : <br> ROCKWELL CUSTOM, LP : <br> : <br> *Defendants* : <br> : | CIVIL ACTION <br><br> Case No. 2:21-cv-03327-CDJ |

**MEMORANDUM OF LAW IN SUPPORT OF DEFENDANTS'
MOTION TO DISMISS PLAINTIFFS' COMPLAINT PURSUANT TO F.R.C.P. 12(b)(6)**

**I.      INTRODUCTION**

Plaintiffs, Aimee Moran ("Ms. Moran") and Jessica Mazzeo ("Ms. Mazzeo") are homebuyers that filed this Complaint against Defendants (collectively "Rockwell") for their alleged involvement in the construction and sale of Plaintiffs' homes. Plaintiffs' federal claim arises under the Fair Housing Act ("FHA") for allegations of discrimination based on sex and familial status as it relates to their shared status as single-mothers. However, single-mothers are not a protected class under the FHA. Furthermore, to the extent that the FHA claim is based on Plaintiffs' status as women, the allegations fall short of meeting any standard of sex discrimination under Third Circuit precedent. Indeed, Plaintiffs' allegations of discrimination are largely speculative and conclusory and do not pass muster under the law. Rather, Plaintiffs' federal claim is simply an improper attempt to misapply the law and prejudice the Defendants by placing them in a false light.

As a practical matter, taking the Complaint as a whole, it is clear that Plaintiffs are simply disgruntled homebuyers bringing a host of claims related to the construction and sale of their homes. However, in addition to misapplying a federal statute to force a false narrative, Plaintiffs also wholly ignore the legal deficiencies tied to their remaining claims. Plaintiffs demand a jury trial and recovery of consequential and incidental damages, despite attaching the Purchase Agreement they signed that contractually bars them from making such demands. Additionally, Plaintiffs' overzealous claims of fraudulent and negligent misrepresentation against the Defendants are simply recharacterizations of their breach of contract claim, and therefore these claims should be dismissed under the gist of the action doctrine. Therefore, this court should dismiss Plaintiff's Complaint for the aforementioned deficiencies and decline to exercise supplemental jurisdiction over any remaining state law claims.

## II.    RELEVANT FACTS

On December 21, 2018, Ms. Moran entered into a Purchase Agreement with Rockwell for 504 Trotter's Court also known as Lot 14. See Compl. at ¶18. Ms. Moran's Purchase Agreement is attached to her Complaint as Exhibit "A." Ms. Mazzeo entered into her Purchase Agreement on January 30, 2019 for 102 Trotter's Court. See Compl. at ¶17. Ms. Mazzeo's Purchase Agreement is attached to her Complaint as Exhibit "B." The Purchase Agreements each contained waivers of the right to jury trial and to collect consequential and incidental damages. See Compl. at Exhibits A and B at §25 and 15(b) respectively. Plaintiffs' Purchase Agreements also reference an extensive warranty, which Plaintiffs did not attach to the instant lawsuit. Id.

Throughout the winter and spring of 2019, Rockwell began construction of 102 & 504 Trotters Court. See Compl. at ¶22. Throughout the construction process, Rockwell continuously employed agents to visit customers during projects and repairs to ensure intimate attention to their

homes. See Compl. at ¶31.Throughout the many phases of construction of Plaintiffs' homes, they would drive by to monitor Rockwell's work. See Compl. at ¶24. During the visits, Ms. Mazzeo lodged several complaints with how the builders were performing their work, insisting that they were not constructing the home as she would want it done. See Compl. at ¶37 – 39. Rockwell addressed Ms. Mazzeo's concerns and corrected issues she complained of during the process. See Compl. at ¶39. The construction of Ms. Mazzeo's home was completed within a year from groundbreaking. See Compl. at ¶28.

After Ms. Mazzeo moved in, however, she lodged several more complaints about her home, mostly regarding her home's fixtures and appliances. See Compl. at ¶40-43. Rockwell again responded to Ms. Mazzeo's many complaints. Id. Furthermore, Rockwell did take the time and expense to rectify all of the issues Ms. Mazzeo complained of. See Compl. at ¶67.

Ms. Moran also lodged several complaints regarding the construction of her home, claiming that Rockwell deviated from her reading of the blueprints for the home's construction. See Compl. at ¶44. Indeed, both Ms. Mazzeo and Ms. Moran continued to make complaints about the quality of their homes for over a year after moving in. See Compl. at ¶56. And Rockwell continued to respond to these complaints and work with Ms. Mazzeo and Ms. Moran in evaluating and resolving issues. See Compl. at ¶56 and 60-63.

Despite Rockwell's continued cooperation in addressing and resolving Plaintiffs' complaints, both Ms. Mazzeo and Ms. Moran continues to raise issues regarding their impression of the quality of their homes. See Compl. at ¶75. The Plaintiffs complain about the HVAC system within their homes, alleging that some rooms seem to have different temperatures than others. See Compl. at ¶77. Rockwell addressed these issues by sending professionals to inspect the system on at least three separate occasions. See Compl. at ¶78-80.

The Plaintiffs also complain about the hardwood floors installed into their homes. See Compl. at ¶72. They base their complaints on the allegation that they received the wrong type of hardwood floors. See Compl. at ¶81-86. However, Rockwell has already addressed this concern on several occasions, explaining that the floors passed a joint inspection by all parties including Plaintiffs' counsel. See Compl. at ¶72. Rockwell also made reference that Plaintiffs' dogs can impact the quality of floors. See Compl. at ¶56.

Plaintiffs also complain about Rockwell installing decks onto their home. See Compl. at ¶87-105. However, both Ms. Mazzeo and Ms. Moran elected to have Rockwell install the decks installed onto their homes. See Compl. at ¶97-98. Furthermore, Plaintiffs' deck complaints come only after learning that Rockwell had issues with the township regarding deck installation requirements. See Compl. at ¶99-105.

Finally, Plaintiffs add to their continued complaints a series of instances which they allege Rockwell harassed and behaved inappropriately. See Compl. at ¶45. Included in these allegations are claims that a Project Manager asked Ms. Moran on a date and on occasion placed an arm around her (See Compl. at ¶46, 53 and 54); complimented Ms. Mazzeo's appearance (See Compl. at ¶48); sent a text message suggesting the parties celebrate with a "shot or 2!!" (See Compl. at ¶51); and gifted them each with a bottle of whiskey in celebration of construction completion. (See Compl. at ¶52).

Despite establishing a foundation of Plaintiffs' willingness to notify Rockwell of their many complaints, Plaintiffs do not cite to one instance where the above referenced "harassment" was brought to Rockwell's attention prior to the instant lawsuit. See Compl. Rather, Plaintiffs incorporate these damaging allegations interchangeably throughout their references to the complaints they have with the construction of their homes. See Compl.

### III.     LEGAL ARGUMENT

#### a.  Standard of Review

Under Rule 12(b)(6), to obtain dismissal Defendants must establish that the Complaint fails to state a claim for relief. See *Hedges v. United States*, 404 F.3d 744, 750 (3d Cir. 2005). To survive a motion to dismiss under Rule 12(b)(6), "a complaint must contain sufficient factual matter, accepted as true, to 'state a claim for relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp v. Twombly*, 550 U.S. 544, 570 (2007)). "Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Id*. Courts conduct a two-part analysis to determine whether dismissal is appropriate. *Fowler v. UPMC Shadyside*, 578 F.3d 203, 210 (3d Circ. 2009). First, the factual and legal elements of a claim are separated. *Id*. The court must accept all of the complaint's well-pleaded facts as true, but may disregard any legal conclusions. *Id*. at 210–211. Second, the court must determine whether the facts alleged in the complaint are sufficient to show that plaintiffs have a plausible claim for relief. *Id*. at 211. Determining whether a complaint states a plausible claim for relief requires the reviewing court to draw on its judicial experience and common sense. *Id*.

Here, Plaintiff's Complaint fails this standard for the foregoing reasons.

#### b.  **Plaintiffs' FHA claim fails to meet the standard of discrimination under U.S.C. §3604.**

Plaintiffs' FHA claims should be dismissed in its entirety because it misapplies the law to an unprotected class, and otherwise is comprised of speculative factual assertions that do not meet any standard of discrimination under U.S.C. §3604. First, Plaintiffs' FHA claim is largely based on Plaintiffs' marital status, which is not a protected class. Second, any remaining allegations of discriminatory conduct are completely unsupported, speculative, and, even when taken as true, do not amount to conduct that is in violation of the Fair Housing Act under this Court's precedent.

***Plaintiffs' claims are based on their marital status, which is not a protected class under U.S.C. §3604.***

A plain reading of U.S.C. §3604 provides that it is unlawful to discriminate on the basis of familial status. Familial status, as defined by the statute, has nothing to do with marital status. *See* 42 U.S.C.A. § 3602, defining familial status exclusively within the context having children, and carefully omitting any reference to marital status. The FHA is clearly designed to prevent discrimination against families with children under the age of 18. Despite this obviousness, Plaintiffs attempt to repurpose the statute and base their claims of discrimination on their statuses as "single mothers." See, Compl. at ¶29, where both the header and the lead paragraph characterize Defendants' alleged conduct as discriminatory towards "single women/mothers." Indeed, this misplaced claim is the theme of the entire Complaint, as the factual allegations consistently make reference to the alleged discrimination of the Plaintiffs based on their statuses as "single women." See Compl. at ¶33, 43, 56, 57, 73, and 104, all characterizing the allegedly discriminated Plaintiffs as "single women." Furthermore, to support the repetitive allegations that Defendants discriminated on Plaintiffs due to their marital status, Plaintiffs offer only one specific allegation comparing themselves to that of a "married couple." See Compl. at ¶104, alleging that *one* married couple did not pay an increased price for having a deck installed onto their home, whereas Plaintiffs did. Despite only providing this one specific allegation, Plaintiffs then offer the baseless assertion that this is a "pattern of behavior." *Id*.

However, notwithstanding Plaintiffs' insufficient showing that Defendants were favoring married persons over single persons, Plaintiffs' claim fails as "single women" are not a legally protected class under 42 U.S.C.A. § 3602. Indeed, the FHA does not provide any rights or protections based on marital status, and therefore any and all claims related to a violation of these rights should be dismissed.

***Plaintiffs' remaining claims of sex discrimination are based on pure conjecture and speculation and are otherwise insufficient to meet any standard of discrimination.***

Plaintiffs FHA claim alleges that Defendants violated 42 U.S.C. § 3604 by creating a "sufficiently severe and pervasive hostile environment for Plaintiffs based on sex and familial status." See Compl. at ¶110. Plaintiffs claim the alleged hostile environment "unlawfully violated [Ms.] Moran's and Mazzeo's rights to enjoy their homes." *Id*. However, Plaintiffs' threadbare recitals alleging Defendants' conduct was "sufficiently severe and pervasive" as to create a "hostile environment" falls short of meeting any standard of discrimination under the FHA. Indeed, even a review of the factual allegations as a whole do not come close to meeting any such standard.

Under the FHA, "[i]t shall be unlawful to coerce, intimidate, threaten, or interfere with any person in the exercise or enjoyment of, or on account of his having exercised or enjoyed ... any right granted or protected by section …3604… of this title." *Revoke v. Cowpet Bay W. Condo. Ass'n*, 66 V.I. 905, 928, 853 F.3d 96, 112 (3d Cir. 2017) (citing 42 U.S.C. § 3617). Interference under Section 3617 may consist of harassment, provided that it is "sufficiently severe or pervasive" as to create a "hostile environment." *Id*. citing *Quigley v. Winter*, 598 F.3d 938, 947 (8th Cir. 2010); and *Honce v. Vigil*, 1 F.3d 1085, 1090 (10th Cir. 1993) (same). The *Revock* court cites to a number of its sister courts to further define harassment in the FHA context, including *DiCenso v. Cisneros*, 96 F.3d 1004, 1008 (7th Cir. 1996). In *DiCenso*, the court adopts the Title VII standard of actionable harassment and further defines it in the FHA context as follows:

> Applied to the housing context, a claim is actionable "when the offensive behavior unreasonably interferes with use and enjoyment of the premises." *Honce*, 1 F.3d at 1090. Whether an environment is "hostile" or "abusive" can be determined only by looking at all the circumstances, and factors may include the frequency of the discriminatory conduct; its severity; whether it is physically threatening or humiliating, or a mere offensive utterance; and whether it unreasonably interferes with an employee's work performance. Harris, 510 U.S. at 23, 114 S.Ct. at 371.

> We repeatedly have held that isolated and innocuous incidents do not support a finding of sexual harassment. See, e.g., *Koelsch v. Beltone Electronics Corp.*, 46 F.3d 705, 708 (7th Cir.1995); *Doe v. R.R. Donnelley & Sons Co.*, 42 F.3d 439, 444 (7th Cir.1994). For example, in *Saxton v. American Tel. & Tel. Co.*, 10 F.3d 526 (7th Cir.1993), the defendant on one occasion put his hand on the plaintiff's leg and kissed her until she pushed him away. Three weeks later, the defendant lurched at the plaintiff from behind some bushes and unsuccessfully tried to grab her. While these incidents were subjectively unpleasant, the defendant's conduct was not frequent or severe enough to create a hostile environment. *Saxton*, 10 F.3d at 534–35. Similarly, in *Weiss v. Coca–Cola Bottling Co. of Chicago*, 990 F.2d 333 (7th Cir.1993), the defendant asked the plaintiff for dates on repeated occasions, placed signs which read "I love you" in her work area, and twice attempted to kiss her. These incidents also were too isolated and insufficiently severe to create a hostile work environment. *Weiss*, 990 F.2d at 337. Common to all of these examples is an emphasis on the frequency of the offensive behavior. "Though sporadic behavior, if sufficiently abusive, may support a [discrimination] claim, success often requires repetitive misconduct." *Chalmers v. Quaker Oats Co.*, 61 F.3d 1340, 1345 (7th Cir.1995).

See generally, *DiCenso v. Cisneros*, 96 F.3d 1004, 1008 (7th Cir. 1996)

Here, in a futile attempt to meet the "sufficiently severe and pervasive" standard, Plaintiffs claim that they were harassed by Defendants during the course of the purchase of their homes. See Compl. at ¶35, stating "plainly, women should be able to purchase homes without fear of being harassed, 'hit on,' pursued for social relationships, or touched." To support this assertion Plaintiffs allege (1) that their complaints about Defendants' services were not taken seriously enough; and (2) each Plaintiff endured specific instances of sexual harassment.

First, Plaintiffs' allegations regarding Defendants' response to their complaints do not constitute harassment of any kind. Plaintiffs seemingly suggests that Defendants inadequate response to their complaints constitutes harassing behavior. See Compl. at ¶36-44. However, under no interpretation of the law do these allegations amount to harassment of any kind. Indeed, under *Revock* this conduct cannot be considered as coercive, intimidating, threatening, or interfering with any right under 3604. Accordingly, these allegations do not apply to Plaintiffs' FHA claim.

8

With respect to the accusations of sexual harassment against Ms. Mazzeo, the alleged conduct is also far too isolated and innocuous to amount to harassment under the FHA. Plaintiffs claim that Defendants commented on Ms. Mazzeo's appearance on occasion. See Compl. at ¶48. However, this conduct can hardly be considered harmful or offensive, and therefore fails the standard set by *DiCenso*. Plaintiffs also reference that Ms. Mazzeo was allegedly touched on two occasions on the shoulders and lower back. These two instances are not only unspecific, they are far too isolated to create the frequency element required under *DiCenso*. Finally, Plaintiffs reference an alleged text message suggesting Ms. Mazzeo owed Defendant "a shot or 2," and gifting her a bottle of whiskey. See Compl. at ¶51-52. Again, this conduct is does not come close to a pattern of harmful or offensive conduct that is required to establish a claim for harassment under the FHA. Therefore, Plaintiffs' allegations of sexual harassment against Ms. Mazzeo, even when taken as true, fail as a matter of law as they are not "sufficiently severe and pervasive" as to create a "hostile environment" under this Court's precedent.

Similarly, with respect to Ms. Moran, the alleged conduct does not meet the standard of harassment in the housing context. Plaintiffs' allegation that Defendants gifting of a bottle of whiskey to Ms. Moran was misconduct fails to constitute harassment. In addition, Plaintiffs generally allege that Ms. Moran was asked on a date several times, and on occasion an arm was placed around her without invitation. See Compl. at ¶46,47,49, 53, 54. Although this conduct is alleged to have happened numerous times, it is still less severe than the facts in *Weiss* where the defendant not only asked the plaintiff for dates on repeated occasions but also tried to kiss her twice. As held in *Weiss*, Defendants alleged conduct here is insufficiently severe to create a hostile environment that gives rise to action.

Finally, even if Plaintiffs are indirectly attempting to base their sex discrimination claims on Defendants' treating men more favorable than women, this too fails. Any allegation Plaintiffs make suggesting Plaintiffs were treated unfairly because they are women is entirely baseless and simply conclusions of law that must be dismissed. Indeed, the only specific allegations Plaintiffs provide to draw an inference of actual disparate treatment towards women is a loose reference to Defendants' treatment of other homebuyers that included a "man of the house." See Compl. at ¶33 stating that "other neighbors in the community who had a 'man in the house' have reported to [Plaintiffs] that their similar problems were addressed or addressed more favorably than [Plaintiffs]." To the extent that this statement is in reference to a "man" being a "husband" it should be dismissed, as marital status is not relevant to an FHA claim. [1] However, Plaintiffs do not even bother to cite specific references to how the "other neighbors" were treated more favorably. Indeed, Plaintiffs entire disparate treatment claim rests on a conclusory hearsay statement made by an unidentified group of "other neighbors." Therefore, Plaintiffs entirely fail to substantiate their claim and fail the standard set by *Fowler*.

Even more telling, Plaintiffs actually do cite to a specific factual allegation suggesting that the Defendants ***do not*** treat women less favorably. See Complaint at 103, specifically referencing Defendants favorable treatment of the woman who owns the home next to Ms. Mazzeo. This actual specific and substantive allegation stands in direct contradiction to Plaintiffs baseless and speculative claims and shows that Plaintiffs are simply trying to portray the Defendants as "bad guys" for the purposes of bolstering their other state-based claims.

In sum, Plaintiffs overly broad and unsubstantiated federal claims of discrimination under are inapplicable under the FHA, legally insufficient, and fatally unspecific and speculative.

---

[1] See also See Compl. at ¶104, where Plaintiffs specifically base their "man of the house" references to that of a "married couple" and not based on sex discrimination.

Therefore, Defendants respectfully request that Plaintiffs' entire FHA claim be dismissed for failing to state a claim upon which relief can be granted.

> **c. Plaintiffs' Complaint fails to state a claim upon which relief can be granted because each has signed a Purchase Agreement that expressly waives their right to a jury trial and to special damages.**

Each Plaintiff signed a Purchase Agreement as part of their transaction with Defendants. *See* Compl. at Ex. A and B. Within each Purchase Agreement is an express mutual waiver of the right to trial by jury in any action or proceeding to enforce any rights related to Plaintiffs' purchase of their respective homes. *Id*. at §25 ***Governing Law; Jury Trial Waiver***. Additionally, each Plaintiff expressly waived their rights to recover any special, punitive, consequential, or incidental damages or damages for delays. *Id*. at §15(b) **Purchaser's Damages**. As discussed below, Pennsylvania law upholds such waivers and therefore Plaintiffs' claims are invalid.

*Jury Trial Waiver*

The Supreme Court has long recognized that a private litigant may waive the right to a jury trial in a civil case. *Commodity Futures Trade Comm'n v. Schor*, 478 U.S. 833, 848–849, 106 S.Ct. 3245, 92 L.Ed.2d 675 (1986). The right to a jury trial in federal court, regardless of whether the claim arises under state law, presents a question of federal law. *Simler v. Conner*, 372 U.S. 221, 222, 83 S.Ct. 609, 9 L.Ed.2d 691 (1963) (per curiam); *Cooper Labs., Inc. v. International Surplus Lines Ins. Co.*, 802 F.2d 667, 671 (3d Cir.1986). Although the right to a jury trial is guaranteed by the Seventh Amendment to the United States Constitution, like all constitutional rights it can be waived by the parties. *United States v. Moore*, 340 U.S. 616, 621, 71 S.Ct. 524, 95 L.Ed. 582 (1951). Unlike other constitutional rights, however, an intentional relinquishment of the right is not required for waiver; the right to a jury trial can be waived by inaction or acquiescence. See, *In re City of Philadelphia Litig.*, 158 F.3d 723, 726 (3d Cir. 1998).

11

Here, Plaintiffs each signed a Purchase Agreement that includes an entire section titled ***Governing Law; Jury Trial Waiver*** which provides a mutual jury trial waiver written in all caps, bold font, and states in relevant part:

> **"SELLER AND PURCHASER EACH WAIVE ANY RIGHT TO A TRIAL BY JURY IN ANY ACTION OR PROCEEDING TO ENFORCE OR DEFEND ANY RIGHTS UNDER THIS AGREEMENT OR RELATING THERETO AND AGREE THAT ANY SUCH ACTION OR PROCEEDING SHALL BE TRIED BEFORE A COURT AND NOT BEFORE A JURY."**

See Compl. at Ex. A, §25 ***Governing Law; Jury Trial Waiver***.

By signing the Purchase Agreement, Plaintiffs thereby actively and expressly waived their rights to a trial by jury. Indeed, Plaintiffs admit the binding effects of the Purchase Agreements in their own Complaint. See Compl. At ¶119. Despite this, Plaintiffs now bring the instant lawsuit that improperly and defectively demands a trial by jury for their claims against Defendants. Accordingly, under Third Circuit precedent that holds jury trial waivers enforceable, Plaintiffs' claims should be dismissed as they are claiming a relief that they are not legally entitled to.

### *Damages Waiver*

Pennsylvania law permits parties of equal bargaining power to contractually limit their liability for consequential damages. See *Philips-Van Heusen Corp. v. Mitsui O.S.K. Lines Ltd.*, 2002 U.S. Dist. LEXIS 27057 (M.D. Pa. Aug. 14, 2002) (citations omitted). The determination of whether consequential damages have been limited by the parties is proper at the summary judgment stage. See e.g., *W. Run Student Hous. Assocs., LLC v. Huntington Nat'l Bank*, 2013 U.S. Dist. LEXIS 110407, at *13 (W.D. Pa. 2013)(noting that the defendant could "undoubtedly raise" at the summary judgment stage the issue of whether Plaintiff's claim for consequential damages should be dismissed.). Consequential damages can be waived by contract. See e.g., *Ernst & Ernst*

*Bldg. Contactors, Inc. v. Fouliceways at Gwynedd*, 2009 Phila. Ct. Com. Pl. LEXIS 45 (2009)(noting that the contract included a waiver of consequential damages).

Here, there are several clauses within the Purchase Agreement that expressly waives Plaintiffs' right to collect certain damages, including consequential damages. See Compl. Ex. A, at §13(b) ***General Warranty Limitations***, stating Defendants are not responsible for consequential damages, personal property damage, or personal injuries under Seller's Warranty. See also Compl. Ex. A, at §15(b) ***Purchaser's Damages*** which states;

> **In the event of a default under or breach of this Agreement by the Seller, the Purchaser's sole remedy shall be to elect either: (i) the recovery of the Deposit and other amounts paid hereunder, in which event this Agreement shall be terminated and thereafter the Parties shall have no further rights or obligations toward the other Party; or (ii) specific performance of Seller☐s obligations hereunder. To the fullest extent permitted by law, Seller is not responsible for non-economic damages or any special, punitive, consequential, or incidental damages or damages for delays. Notwithstanding the foregoing, Purchaser☐s remedies against Seller shall not be limited if Seller breaches its obligation to reach Substantial Completion of the Home within twenty-four (24) months after the date on which this Agreement is signed by all Parties unless due to causes recognized as impossibility of performance under applicable law.**

By signing the Purchase Agreement, Plaintiffs thereby actively and expressly waived their rights to claim any special, punitive, consequential, or incidental damages against Defendants. Indeed, Plaintiffs admit the binding effects of the Purchase Agreements in their own Complaints. See Compl. At ¶119. Despite this, Plaintiffs now bring the instant lawsuit that improperly and defectively demands consequential and incidental damages against Defendants. Accordingly, under Third Circuit precedent that holds jury trial waivers enforceable, Plaintiffs' claims should be dismissed as they are claiming a relief that they are not legally entitled to.

### d. Gist of the action

Plaintiffs' claims for Fraudulent Misrepresentation (COUNT IV) and Negligent Misrepresentation (COUNT V) are essentially a recasting of the relief sought under the Breach of Contract claims (COUNT III) and should therefore be dismissed under the "gist of the action" doctrine.

When misrepresentation claims arise from duties imposed by contract, the gist of the action doctrine provides that only a breach of contract claim should survive. *Werner Kammann Maschinenfabrik, GmbH v. Max Levy Autograph, Inc.*, CIV.A. 01-1083, 2002 WL 126634, at *6–7 (E.D. Pa. Jan. 31, 2002) (dismissing claims for fraudulent misrepresentation and negligent misrepresentation under the gist of the action doctrine). A mere allegation of fraud and negligence is insufficient to create a distinct tort remedy. See *Horizon Unlimited, Inc. v. Silva*, No. Civ.A. 97–7430, 1998 WL 88391, at *5 (E.D.Pa. Feb. 26, 1998) (dismissing negligent misrepresentation claim premised on statements in promotional literature).

When a plaintiff claims defendant committed a tort in the course of carrying out a contractual agreement, Pennsylvania courts examine the claim and determine whether the 'gist' or gravamen of it sounds in contract or tort; a tort claim is maintainable only if the contract is 'collateral' to conduct that is primarily tortious. *Asbury Auto. Grp. LLC v. Chrysler Ins. Co.*, 01-3319, 2002 WL 15925, at *3 (E.D. Pa. Jan. 7, 2002). The gist of the action test requires the court to determine the essential nature of the claim alleged by distinguishing between contract and tort claims on the basis of the source of the duties allegedly breached; where the duties essentially flow from an agreement between the parties, the claim is deemed contractual in nature, whereas if the duties breached were of a type imposed on members of society as a matter of social policy, the claim is deemed essentially based in tort. *Id*.

Plaintiffs base their claims of fraudulent and negligent misrepresentations (collectively, Misrepresentation Claims") on two representations made during the construction and sale of Plaintiffs' home; (1) the promotion of "hardwood floors" to be installed, but receiving "engineered hardwood floors" instead; and (2) that Defendants presented a contractual option to install a deck, but learning that the township required that each home have a deck installed. See generally, Compl. However, these claims arise from duties that were directly born from the parties' contractual relationship and therefore are contractual in nature. Plaintiffs expressly cite to the Purchase Agreement as a basis for setting their expectations regarding the installation of a deck. See Compl. At ¶19. Similarly, Plaintiffs' expectations of having hardwood floors also flows directly from their contract with Defendants to construct their homes. Furthermore, as in *Silva*, even if Plaintiffs claim they relied on Defendants' promotional literature advertising hardwood floors, this does not sever their Misrepresentation Claims from that of their Breach of Contract claims. See Compl. At ¶119

Indeed, there existed no duty imposed by social policy that obligated Defendants to install hardwood floors or decks in Plaintiffs' homes whatsoever. Rather, Defendants' duties flow from the Purchase Agreement signed by all parties and any claims arising from those duties are entirely contractual in nature. Accordingly, as in *Maschinenfabrik, GmbH*, this Court should dismiss Plaintiffs' Misrepresentation Claims which are solely contractual in nature.

      **e. This Court should decline to exercise supplemental jurisdiction over Plaintiffs' remaining state law**

As Plaintiffs' federal FHA claim fails as a matter of law, this Court should decline to exercise supplemental jurisdiction over the Plaintiffs' remaining state law claims. Section 1367(c)(3) contemplates and permits the court to exercise its discretion when only a state law claim remains in a case. 28 U.S.C. § 1367(c)(3) ("The district courts may decline to exercise supplemental jurisdiction over a claim ... if ... the district court has dismissed all claims over which

it has original jurisdiction[.]"). "Needless decisions of state law should be avoided both as a matter of comity and to promote justice between the parties, by procuring for them a surer-footed reading of applicable law." *United Mine Workers of Am. v. Gibbs*, 383 U.S. 715, 726 (1966); *see also Robert Mauthe M.D., P.C. v. Optum, Inc.*, Civ. A. No. 17-1643, 2018 WL 3609012, at *7 (E.D. Pa. July 27, 2018) (declining to exercise supplemental jurisdiction over state law conversion claim after summary judgment entered on plaintiff's TCPA claim), aff'd 925 F.3d 129 (3d Cir. 2019) (holding that "the Court did not err in declining to exercise supplemental jurisdiction over Mauthe's state law claim").

Here, as in *Optum*, the court should decline to exercise supplemental jurisdiction over Plaintiffs' remaining state law claims after dismissal of Plaintiffs' FHA claims, in the interest of comity and to promote justice.

### IV.  CONCLUSION

For the reasons set forth herein, the Court should dismiss Plaintiffs' Complaint.

                                        Respectfully submitted,

                                        **BOCHETTO & LENTZ, P.C.**

                                        */s/ Gavin P. Lentz*

Date: September 23, 2021         By: _____
                                        Gavin P. Lentz, Esquire (53609)
                                        Kean C. Maynard, Esquire (327794)
                                        1524 Locust Street
                                        Philadelphia, PA 19102
                                        (215) 735-3900
                                        glentz@bochettoandlentz.com
                                        kmaynard@bochettoandlentz.com
                                        *Attorneys for Defendants*