IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| AIMEE MORAN et al. | : | |
| | : | CIVIL ACTION |
| v. | : | |
| | : | NO. 21-3327 |
| ROCKWELL DEVELOPMENT | : | |
| GROUP LLC et al. | : | |

**MEMORANDUM**

Presently before the Court are Defendant Valley Forge Real Estate Group, LLC F.R.C.P.12(b)(6) Motion to Dismiss Plaintiffs' Second Amended Complaint against Valley Forge Real Estate Group, LLC (ECF No. 45), and Plaintiffs' Motion to Compel Discovery Responses and Disclosures from Defendant Valley Forge Real Estate Group, LLC (ECF No. 51). For the following reasons, Defendant Valley Forge Real Estate Group, LLC's ("VFREG") Motion will be denied, and Plaintiff's Motion will be dismissed as moot.

## I. BACKGROUND

Aimee Moran and Jessica Mazzeo ("Plaintiffs") are single mothers who purchased newly constructed homes in Rockwell Development Group's neighborhood, The Carriages at Runnymeade Farms, in Newton Square, Pennsylvania. (Sec. Am. Compl., ECF No. 39, ¶¶ 1-2.) Ms. Moran moved into her home on November 27, 2019, and Ms. Mazzeo moved into her home on December 19, 2019. (Compl., ECF No. 1, ¶¶ 27-28.) They initially sued Rockwell Development Group LLC and four subsidiaries (collectively "Rockwell") on July 27, 2021, and alleged the violation of federal and state law.[1] (*Id.* ¶¶ 3-8, 108-130).

[1] The factual allegations underlying their claims against Rockwell are summarized in the Court's memorandum concerning Rockwell's Motion to Dismiss. *See Moran v. Rockwell Dev. Grp., LLC*, No. 21-3327, 2022 WL 866677, at *1-5 (E.D. Pa. Mar. 23, 2022).

With leave of Court, Plaintiffs filed a Second Amended Complaint. Pertinent to the instant motion, the Second Amended Complaint added VFREG as a Defendant.[2] VFREG is a "commonly owned affiliate of Defendants Rockwell Development Group, Rockwell Edgmont, Rockwell Edgmont II, Rockwell Homes, and Rockwell Customs." (Sec. Am. Compl., ¶ 8.) It is a "real estate brokerage and was the listing broker for all homes sold in The Carriages at Runnymeade Farms." (*Id.* ¶ 18.) "VFREG and Rockwell have common-ownership and share numerous employees." (*Id.*) For example, Rockwell's President is the sole-manager of VFREG, Rockwell's General Counsel is VFREG's Broker of Record in Pennsylvania, and Rockwell's Vice President of Custom Homes and Renovations is a real estate agent at VFREG. (*Id.*)

Plaintiffs allege that Rockwell develops promotional and marketing materials about the homes it builds and that VFREG disseminates the information to the public. (*Id.* ¶ 86.) Plaintiffs' allegations against VFREG concern representations about the hardwood flooring and decks installed in Plaintiffs' homes.

Plaintiffs allege that "Rockwell and VFREG advertised in marketing brochures and . . . over social media that the homes in The Carriages at Runnymeade Farms would have 'hardwood floors.'" (*Id.* ¶ 88.) Promising hardwood floors "connotes quality and durability." (*Id.*) But, after Plaintiffs moved into their homes, they realized that the floors were "'engineered' hardwood floors," which is of materially lesser quality than hardwood floors. (*Id.* ¶¶ 89-90.)

Plaintiffs allege that Rockwell and VFREG "[o]stensibly" were aware that "engineered" hardwood flooring is of lesser quality than hardwood floors "given that [they] purposefully omitted

[2] Plaintiffs sued VFREG after Rockwell first identified it, asserting as an affirmative defense that Plaintiffs failed to join a necessary party, VFREG. (Answer, ECF No. 22, at 23) ("Plaintiff's claims of unlawful conduct against non-parties, such as Valley Forge Real Estate, LLC – the non-party real estate company that marketed the properties at issue – are barred due to Plaintiff's failure to join those parties in the action.") (*see also* Answer to Plfs' Am. Compl., ECF No. 44, at 25; Mot. for Leave to File a Sec. Am. Compl., ECF No. 36.)

the word ‘engineered’ from all promotional materials and advertisements discussing flooring.” (*Id*. ¶ 92.) Plaintiffs further allege that “Rockwell and VFREG misled homebuyers by implying [that] the homes would be installed with traditional genuine hardwood floors when Rockwell knew this was not the case and never disclosed that the ‘engineered’ flooring was actually far inferior to the ‘hardwood flooring’ advertised.” (*Id*. ¶ 93.)

With respect to the installation of the decks at Plaintiffs’ homes, Plaintiffs allege that Rockwell was engaged in a dispute with a local township about the installation of decks on every home in the development. (*Id*. ¶¶ 97-98.) By early 2019, Rockwell agreed that every home must have a deck, and, in response, they adjusted the base price of every home that had not already been under contract. (*Id*. ¶ 98.) Plaintiffs entered into contract for their homes on December 21, 2018, and January 30, 2019, respectively (*id*. ¶¶ 21-22), so they were not affected by this change.

Plaintiffs allege that “despite knowing that every home had to have a deck to comply with township requirements, Rockwell’s construction team and VFREG’s sales team were still informing homebuyers that were already under contract that a deck would be considered an optional upgrade at an additional cost.” (*Id*. ¶ 99.) For example, a sales representative of VFREG and a Rockwell Project Manager told Ms. Mazzeo that if she did not elect to have a deck, Rockwell would be required to install a metal bar over the sliding glass doors to comply with the township code. (*Id*. ¶ 101.) Similarly, on or about March 29, 2019, a Rockwell Project Manager provided Ms. Mazeeo a copy of the “home renderings” that “highlighted and wrote ‘not included’ in the space where a deck would be located.” (*Id*. ¶ 102.)

Plaintiffs allege that “Rockwell and VFREG misled Ms. Mazzeo by not disclosing that the installation of a metal bar that Rockwell insisted was required, would not suffice to satisfy the township and that Rockwell had to include the deck for the home to meet township code.” (*Id*. ¶

103.) In the end, "having no choice," Plaintiffs elected to have decks installed on their homes and paid additional costs for them. (*Id.* ¶¶ 104-105).

At a Homeowners Association meeting in March 2020, Ms. Mazzeo learned that Rockwell was required to install a deck on all homes in the development. (*Id.* ¶ 106.) Ms. Mazzeo approached the Rockwell VP of Land Development "about these misrepresentations" and requested a refund for Plaintiffs' decks, to which he responded that "Rockwell decided that everyone was to pay for their decks 'one way or another.'" (*Id.* ¶ 107.)

Meanwhile, Plaintiffs allege that the owners of two homes, who were also under contract before Rockwell factored the decks into the base price of the homes but were heterosexual married couples, were not required to pay for their decks. (*Id.* ¶¶ 110-11.)

Plaintiffs summarize the Defendants' misrepresentation as follows: "In essence, Rockwell and VFREG misrepresented and allowed for a material omission when it chose to not explain Rockwell's legal obligation to install decks on all homes in the community and the statement on the Purchase Agreement that the deck was 'not included' was a material misrepresentation—Rockwell could not have sold even one home without installing a deck." (*Id.* ¶ 112.)

Plaintiffs assert two causes of action against VFREG: a violation of Pennsylvania's Unfair Trade Practices and Consumer Protection Law ("UTPCPL"), 73 P.S. 201-1, *et. seq*., and negligent misrepresentation/and or concealment. (*Id.* ¶¶ 125-130, 136-138.)

## II. LEGAL STANDARD

"[A] plaintiff must allege 'enough facts to state a claim to relief that is plausible on its face'" in order to survive a motion to dismiss pursuant to Rule 12(b)(6). *New Jersey Carpenters & the Trs. Thereof v. Tishman Const. Corp. of New Jersey*, 760 F.3d 297, 302 (3d Cir. 2014) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). "A complaint has facial

plausibility when there is enough factual content 'that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged.'" *Id.* (quoting *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009)). When considering the sufficiency of a complaint on a 12(b)(6) motion, a court "must accept all factual allegations in the complaint as true and draw all reasonable inferences in favor of the plaintiff." *Id.* (citing *Phillips v. Cnty. of Allegheny*, 515 F.3d 224, 231 (3d Cir. 2008)). The court should also consider the exhibits attached to the complaint and matters of public record. *See Schmidt v. Skolas*, 770 F.3d 241, 249 (3d Cir. 2014).

A complaint that merely alleges entitlement to relief, without alleging facts that show such an entitlement, must be dismissed. *See Fowler v. UPMC Shadyside*, 578 F.3d 203, 211 (3d Cir. 2009). "Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Iqbal*, 556 U.S. at 678. "While legal conclusions can provide the framework of a complaint, they must be supported by factual allegations." *Id.* at 679. A complaint must contain "'enough facts to raise a reasonable expectation that discovery will reveal evidence of' the necessary element." *Phillips*, 515 F.3d at 234 (quoting *Twombly*, 550 U.S. at 556).

In determining whether dismissal of the complaint is appropriate, courts use a two-part analysis. *Fowler*, 578 F.3d at 210. First, courts separate the factual and legal elements of the claim and accept all of the complaint's well-pleaded facts as true. *Id.* at 210-11. Next, courts determine whether the facts alleged in the complaint are sufficient to show that the plaintiff has a "'plausible claim for relief.'" *Id.* at 211 (quoting *Iqbal*, 556 U.S. at 679).

## III. DISCUSSION

### A. VFREG's Motion to Dismiss

#### *1. UTPCPL*

VFREG argues that Plaintiffs' UTPCPL claim fails because VFREG did not sell Plaintiffs any goods or enter into a contract with them, and, according to VFREG, "UTPCPL claims can only be asserted against a seller / owner – provider of the goods and services that are the subject of the purchase transaction." (Mot., ECF No. 45, at 13-15 (ECF pagination).) Plaintiffs bought their homes from Rockwell Edgmont, LLC—not VFREG—and as such, VFREG argues that Plaintiffs cannot bring an UTPCPL claim against it. (*Id*. at 15.)

Plaintiffs contend that VFREG has too narrowly interpreted the UTPCPL. In particular, caselaw has rejected VFREG's argument that the UTPCPL only applies to *sellers* of goods and to parties in direct contractual privity. (Opp'n, ECF No. 46, at 14-15 (ECF pagination).) VFREG may be sued under the UTPCPL because "Plaintiffs and VFREG had a commercial relationship for personal purposes, VFREG made misrepresentations to Plaintiffs, Plaintiffs relied upon the misrepresentations, and Plaintiffs made a personal purchase [as] a result." (*Id*. at 18.)

We agree with Plaintiffs and reject VFREG's challenge to Plaintiffs' UPTCPL claim.

To state a claim, a party must demonstrate that: "(1) they purchased or leased 'goods or services primarily for a personal, family, or household purpose'; (2) they suffered an 'ascertainable loss of money or property'; (3) the loss occurred 'as a result of the use or employment by a vendor of a method, act, or practice declared unlawful by' the [UTP]CPL; and (4) the consumer justifiably relied upon the unfair or deceptive business practice when making the purchasing decision." *Gregg v. Ameriprise Fin., Inc.*, 245 A.3d 637, 646 (Pa. 2021) (quoting 73 P.S. §§ 201-8, 201-9.2(a)).

The UPTCPL prohibits "unfair methods of competition and unfair or deceptive acts or practices in the conduct of any trade or commerce." 73 Pa. Stat. § 201-3. "Trade" and "commerce" are defined as "*the advertising*, offering for sale, sale *or distribution of any services* and any property, . . . and *includes any trade or commerce directly or indirectly* affecting the people of [Pennsylvania.]" 73 Pa. Stat. § 201-2(3) (emphasis added).

The statute provides for different categories of "[u]nfair methods of competition" and "unfair or deceptive acts or practices." They include: "[c]ausing likelihood of confusion or of misunderstanding as to the source, sponsorship, approval or certification of goods or services;" "[r]epresenting that goods or services have . . . characteristics . . . that they do not have . . .;" "[r]epresenting that goods or services are of a particular standard, quality or grade, or that goods are of a particular style or model, if they are of another;" and "[a]dvertising goods or services with intent not to sell them as advertised." *Id.* § 201-2(4).

The UPTCPL "imposes liability on commercial *vendors* who engage in conduct that has the potential to deceive and which creates a likelihood of confusion or misunderstanding." *Gregg*, 245 A.3d at 649 (emphasis added). The UTPCPL "makes it unlawful for a vendor to employ unfair methods of competition and unfair or deceptive acts or practices in the conduct of any trade or business." *Jefferson v. Carosella*, Nos. 1527 EDA 2020, 1528 EDA 2020, 2021 WL 4775626, at *8 n.8 (Pa. Super. Oct. 13, 2021) (citing 73 P.S. § 201-3(a)). As such a "vendor" must engage in conducting a trade or business, which under the UTPCPL, includes advertising that directly or indirectly affects the people of the Commonwealth of Pennsylvania. *See id.* With respect to the parties against whom someone may bring an UTPCPL claim, the law prescribes that a qualified purchaser who "suffers any ascertainable loss . . . as a result of the use or employment *by any*

*person* of a method, act or practice declared unlawful" may bring a private action. 73 Pa. Stat. § 201-9.2 (emphasis added).

Pennsylvania courts have not imposed a "strict technical privity" requirement between the party suing and the party being sued in an UTPCPL action. *See, e.g.*, *Diehl v. The Cutler Grp., Inc.*, No. 2302 EDA 2015, 2016 WL 5349116, at *4 (Pa. Super. July 18, 2016); *Valley Forge Towers S. Condo. v. Ron-Ike Foam Insulators, Inc.*, 574 A.2d 641, 647 (Pa. Super. 1990), *aff'd,* 605 A.2d 798 (Pa. 1992). Such a requirement is not aligned with construing the statute broadly "to effectuate its general[] intent to eradicate fraudulent business practices." *Valley Forge Towers S. Condo.*, 574 A.2d at 647. If a strict technical privity requirement was imposed on the statute, parties could "successfully evade liability" and "[d]isreputable businesses might set-up judgment proof, under-capitalized contractors . . . or deceive reputable contractors, leaving them to pay the judgment when the deception is discovered later." *Id*. at 646-47.

Instead, the focus of the UTPCPL is on common law fraud, *see id.* at 647, and parties may bring UTPCPL claims against individuals who do not sell goods to the party bringing suit but act as advisors or agents to them or sell a good to another individual that indirectly affects the party bringing suit. *See Richards v. Ameriprise Fin., Inc.*, 152 A.3d 1027, 1030-32, 1036-37 (Pa. Super. 2016) (involving an UTPCPL claim against a financial advisor who misrepresented the cost of an insurance policy); *Jefferson*, 2021 WL 4775626, at *1, 8 n.8 (finding that a trial court erred in concluding that a builder who sold a property to an individual who subsequently sold the property to the plaintiff was not a 'vendor' for purposes of the UTPCPL because "despite the fact that [the builder] did not build the house for [the plaintiff], his services *indirectly affected* [the plaintiff,] thereby satisfying the definition of a 'vendor' under the UTPCPL"). Similarly, courts have recognized an UTPCPL claim against a real estate agent who marketed a property and the real

estate company with which the agent was associated. *See Schwartz v. Rockey*, 932 A.2d 885, 888-89 (Pa. 2007); *Schwartz v. Rockey*, No. 2000-5705, 2004 WL 5751357 (Pa. Com. Pl. June 30, 2004).

The cases VFREG cites in defense of its position pertain to who may be a proper *plaintiff* to bring an UTPCPL claim. *See* Mot. at 14. They do not address the question presented here with respect to who may be sued under the UTPCPL.

Here, Plaintiffs assert that Rockwell develops promotional and marketing materials about the homes it builds and that VFREG disseminates the information to the public. (Sec. Am. Compl. ¶ 86.) They further allege that the entities misrepresented information about the hardwood flooring and decks, upon which they relied. (*See Id.* ¶¶ 88-90, 92-93, 99, 101-05, 112.) Advertising is a form of "trade" and "commerce" that is covered by the UTPCPL. *See* 73 Pa. Stat. § 201-2(3). The unfair or deceptive acts that Plaintiffs allege VFREG committed fall within the categories of activity that the UTPCPL is intended to target, such as "[c]ausing likelihood of confusion or of misunderstanding as to the source, sponsorship, approval or certification of goods or services;" "[r]epresenting that goods or services have . . . characteristics . . . that they do not have . . .;" "[r]epresenting that goods or services are of a particular standard, quality or grade, or that goods are of a particular style or model, if they are of another;" and "[a]dvertising goods or services with intent not to sell them as advertised." *See Id.* § 201-2(4). As a result, VFREG may be sued under the UTPCPL. VFREG's Motion is denied, and Plaintiffs' VFREG claim may proceed.

*2. Negligent Misrepresentation / Concealment*

VFREG advances two arguments for dismissing Plaintiff's negligent misrepresentation claim. There are four elements to a negligent misrepresentation claim under Pennsylvania law: 1) the defendant misrepresented a material fact; 2) the defendant knew or should have known that the

statement was a misrepresentation; 3) the defendant intended for the plaintiff to rely on the representation; and 4) the plaintiff's justifiable reliance led to an injury. *Gibbs v. Ernst*, 647 A.2d 882, 890 (Pa. 1994).

a. Statute of Limitations

VFREG first argues that Plaintiff's negligent misrepresentation / concealment claim is time-barred. The claim has a two-year statute of limitations. (Mot. at 15.) Plaintiffs pled that they identified issues with the hardwood floors "almost immediately" after they moved into their homes in 2019, and that Ms. Mazzeo learned about the "deck issue" in March 2020. (*Id*. at 16.) VFREG maintains that by March 31, 2020, both Plaintiffs were aware of both issues, and as a result, the two-year statute of limitations expired no later than March 31, 2022 for all of the allegations. (*Id*.) Plaintiffs sued VFREG on September 15, 2022, after the limitations period had expired. (*Id*. at 16-17.)

Plaintiffs do not dispute that the statute of limitations had expired by the date the Second Amended Complaint was filed, but they maintain that their negligent misrepresentation / concealment claim relates back to the filing of the Complaint, which was timely filed. (Opp'n at 18-19.)

Under Fed. R. Civ. P (15)(c), an amendment to a pleading that adds a new party relates back to the date of the original pleading when "the amendment asserts a claim or defense that arose out of the conduct, transaction, or occurrence set out . . . in the original pleading" and "within the period provided by Rule 4(m) for serving the summons and complaint, the party to be brought in by the amendment[] received such notice of the action that it will not be prejudiced in defending on the merits; and knew or should have known that the action would have been brought against it, but for a mistake concerning the proper party's identity." Fed. R. Civ. P 15(c)(1)(B) and (C).

The plaintiff seeking leave to amend a pleading has the burden of demonstrating that each element has been satisfied. *Muhammed v. Pawlowski,* No. 11-5004, 2012 WL 748411, at *2 n. 3 (E.D. Pa. Mar. 7, 2012). "If the amendment relates back to the date of the filing of the original complaint, the amended complaint is treated, for statute of limitations purposes, as if it had been filed at that time." *Garvin v. City of Phila.,* 354 F.3d 215, 220 (3d Cir. 2003).

"[R]elation back under Rule 15(c)(1)(C) depends on what the party to be added knew or should have known, not on the amending party's knowledge or its timeliness in seeking to amend the pleading." *Krupski v. Costa Crociere S.p.A.,* 560 U.S. 538, 541 (2010). In other words, what matters "is not whether [the plaintiff] knew or should have known the identity [of the newly-added party] as the proper defendant, but whether the [the newly-added party] knew or should have known that it would have been named as a defendant but for an error." *Krupski*, 560 U.S. at 548.

The Third Circuit has recognized two methods of imputing notice to a newly added defendant. *Ferencz v. Medlock*, 905 F. Supp. 2d 656, 668 (W.D. Pa. 2012). "First, notice may be imputed by the 'shared attorney' method—whereby the individual, previously unnamed defendant received timely notice because of sharing an attorney with an originally named defendant." *Ferencz*, 905 F. Supp. 2d at 668. In this situation, there must be representation by the shared counsel within the prescribed period for serving the summons and complaint. *Id*. at 668-69 (citing *Garvin v. City of Phila.,* 354 F.3d 215, 223 (3d Cir. 2003)). "Second, notice may be imputed by the 'identity of interest' method—whereby the individual defendant received timely notice because he had an identity of interest with an originally named defendant." *Id*. at 669 (citing *Brown v. City of Phila.,* No. 09-5157, 2010 WL 1956245, at *4 (E.D. Pa. May 7, 2010) (citing *Singletary v. Pennsylvania Dep't of Corr.,* 266 F.3d 186, 196 (3d Cir. 2001))). An identity of interest exists when "the parties are so closely related in their business operations or other activities that the

institution of an action against one serves to provide notice of the litigation to the other." *Singletary*, 266 F.3d at 197.

Here, the Second Amended Complaint relates back to the Complaint. The Second Amended Complaint concerns the same conduct, transaction, or occurrence as the Complaint. All of the defendants were engaged in the conduct at issue in this action regarding the marketing and sale of properties in The Carriages at Runnymeade Farms development. (Sec. Am. Compl. ¶¶ 86, 88.) Taking Plaintiff's allegations as true, Rockwell and VFREG have common-ownership and leadership. (*Id.* ¶¶ 8, 18, 87.) Rockwell itself asserted as an affirmative defense that VFREG should be added as a party. (*See* Answer at 23; Answer to Plfs' Am. Compl. at 25.) As a result, there is sufficient identity of interest between the parties to attribute notice of the original action to VFREG, which will not be prejudiced in defending on the merits. Therefore, Plaintiff's claim against VFREG relates back to the Complaint, which was filed within the statute of limitations.

b. Economic Loss Doctrine

Next, VFREG argues that Plaintiff's negligent misrepresentation / concealment claim is barred by the economic loss doctrine, and that no exceptions to the doctrine apply in this case. (Mot. at 17.)

Plaintiffs maintain that the economic loss doctrine is not applicable here because it prohibits recovery for "tort economic losses to which their entitlement flows only from a contract," and does not apply where, as here, the parties are not in a contractual relationship. (Opp'n at 19.)

We agree with Plaintiffs that the economic loss doctrine is not a basis to bar recovery in this case.

The applicability of the economic loss doctrine depends on the "source of the duty plaintiff claims the defendant owed." *Dittman v. UPMC*, 196 A.3d 1036, 1054 (Pa. 2018). "[I]f the duty arises under a contract between the parties, a tort action will not lie from a breach of that duty. However, if the duty arises independently of any contractual duties between the parties, then a breach of that duty may support a tort action." *Dittman*, 196 A.3d at 1054. In addition, Pennsylvania courts have held that "a cause of action for negligently supplying information seeking economic damages is not barred by the economic loss doctrine." *Kantor v. Hiko Energy, LLC*, 100 F. Supp. 3d 421, 428 (E.D. Pa. 2015) (citation omitted).

Here, VFREG has a "general social duty not to carelessly (or knowingly) misrepresent a fact on which another party might justifiably rely." *See Busch v. Domb*, No. 17-2012, 2017 WL 6525779, at *10 (E.D. Pa. Dec. 21, 2017); *see also Gibbs*, 647 A.2d at 890. Because this legal duty exists independently from any contractual obligations between the parties—neither party has even alleged that a contractual relationship exists between Plaintiffs and VFREG—the economic loss doctrine does not bar Plaintiffs' claim. *See Dittman*, 196 A.3d at 1056. Accordingly, VFREG's Motion is denied, and Plaintiffs' negligent misrepresentation claim may proceed.

**B. Plaintiffs' Motion to Compel**

Plaintiff's Motion to Compel discovery from VFREG is moot, and VFREG is required to engage in the discovery process. Plaintiffs propounded discovery requests on VFREG. (Mot. to Compel, ECF No. 51, at 3 (ECF pagination).) VFREG refused to respond to Plaintiffs' requests for production and interrogatories while its Motion to Dismiss was pending. (*Id.*; Opp'n, ECF No. 52, at 4 (ECF pagination).) In response and after unsuccessful conferrals, Plaintiffs moved to compel VFREG to respond to their discovery requests. (Mot. to Compel at 4). Now that VFREG's Motion to Dismiss has been decided and Plaintiffs' claims against VFREG may proceed,

VFREG's sole basis for objecting to Plaintiffs' discovery requests is moot. Accordingly, we order VFREG to answer Plaintiffs' discovery requests.

## IV. CONCLUSION

For the foregoing reasons, VFREG's Motion is denied, and Plaintiffs' Motion is dismissed as moot. An appropriate Order follows.

**BY THE COURT:**

***/s/ R. Barclay Surrick***
**R. BARCLAY SURRICK, J.**